2021 IL App (1st) 210203-U

No. 1-21-0203

Order filed October 28, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| DEWAIN PURDLE, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2019 L 009838 |
| | ) | |
| ALLSTATE INSURANCE, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Judgment of the circuit court affirmed where the court granted defendant insurance company's motion for summary judgment because the decedent-insured provided her incorrect date of birth on application for life insurance.

¶ 2    This action arises from an insurance dispute between *pro se* plaintiff Dewain Purdle and defendant Allstate Life Insurance Company (Allstate) regarding the amount of death benefit proceeds owed to plaintiff as a beneficiary under his deceased mother's life insurance policy. Plaintiff appeals an order of the circuit court of Cook County which granted summary judgment in favor of Allstate, regarding plaintiff's claim for breach of insurance contract. For the reasons

which follow, we affirm.[1]

¶ 3                                        I. BACKGROUND

¶ 4     On September 18, 1990, plaintiff's mother Roxie Purdle (decedent), completed and signed an application to convert her term life insurance policy into a universal life insurance policy. On the conversion application, decedent listed her date of birth as October 25, 1938. Based on the representations decedent made on the conversion application, Allstate issued a Flexible Premium Adjustable Life Insurance Policy (no. 747 099 677) on October 18, 1990, insuring the life of the decedent for $50,000.

¶ 5     On February 21, 2018, the decedent died from heart disease and diabetes mellitus. Following his mother's death, plaintiff submitted a claim for death benefits under the converted universal life insurance policy. Allstate requested that plaintiff provide it with certified copies of his mother's death and birth certificates. The death certificate and claim form plaintiff submitted listed the decedent's date of birth as December 10, 1925. The decedent's birth certificate listed her date of birth as December 9, 1925; the date of filing of the certificate was listed as December 10, 1925.

¶ 6     Plaintiff subsequently confirmed that his mother was born in 1925, not 1938. As a result of the misstated age on the conversion application, Allstate adjusted and reduced the death benefit from $50,000 to $21,208, the amount it alleges would have been paid if the decedent had provided her correct date of birth. According to Allstate, a non-smoking female born in 1938 had an annual cost of insurance rate of 31.41, while a non-smoking female born in 1925 had an annual cost of insurance rate of 165.35. As a result, the decedent did not pay premiums for an insurance policy

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon entry of a separate written order.

with a specified amount of $50,000, but only purchased life insurance with a specified amount of $21, 208.

¶ 7    On April 12, 2018, Allstate sent plaintiff a check in the amount of $21,811. This amount included the $21,208 death benefit as well as an additional $603. The additional $603 represented the decedent's share of the settlement in the class action lawsuit of *Lee v. Allstate Life*. The check was accompanied by a letter which informed plaintiff in relevant part as follows:

> "A difference exists between the birth dates listed on the insured's application for insurance and the death certificate. The policy was issued based on the insured's year of birth of 1938; however, based on the death certificate, it should have been issued using a year of birth of 1925. The contract provides for an adjustment to the death benefit when there is a misstatement of age. Therefore, we have calculated the benefit amount which the premiums paid would have purchased at the correct age."

¶ 8    On June 13, 2018, plaintiff filed a complaint with the Illinois Department of Insurance (Department). Allstate responded to the complaint and explained to the Department why it reduced the death benefit. The Department declined to pursue plaintiff's complaint and no action was taken against Allstate.

¶ 9    On September 6, 2019, plaintiff, acting *pro se*, filed a complaint against Allstate in the circuit court of Cook County. In the complaint, plaintiff alleged, essentially, a claim for breach of insurance contract based on willful misconduct. Plaintiff claimed that agents for Allstate were aware of his mother's correct age at the time she completed and signed the conversion application. Plaintiff alleged that he suspected Allstate possessed internal documents which would show that its agents routinely encouraged elderly and African-American clients to misstate their ages on

insurance applications in order for the insurance agents to collect premiums.

¶ 10    On October 29, 2019, the circuit court referred the matter to commercial mandatory arbitration. The arbitration hearing was reset a number of times and was eventually conducted on July 24, 2020. At the arbitration hearing, Janet Dever, a senior manager of Life and Annuity claims at Allstate, was questioned regarding her knowledge of Allstate's business records pertaining to age misrepresentation cases. Dever responded that Allstate did not track such information. Following the hearing, the arbitrator entered an award in favor of Allstate. On July 30, 2020, plaintiff rejected the arbitration award.

¶ 11    On August 30, 2020, plaintiff sent an email to counsel for Allstate requesting discovery of, *inter alia*, the "zip codes of cases where payouts were disputed because of discrepancies of date of birth." On September 14, 2020, Allstate responded in writing to the discovery request. Allstate reasserted that it does not track or maintain the requested information. Plaintiff did not respond to Allstate's response to his discovery request.

¶ 12    On November 4, 2020, Allstate moved for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2020)). Allstate argued that it did not breach the insurance contract when it reduced the death benefit from $50,000 to $21,208, as the reduction was permitted under the express terms of the policy's "misstatement of age" provision and by section 224(1)(d) of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/224(1)(d) (West 2018)).

¶ 13    The insurance policy contains a "Misstatement of Age or Sex" provision which provides that: "If the insured's age or sex shown on the app is wrong, we will change the amounts we pay to the amounts which the deductions made would have bought at the right age and sex."

¶ 14    Section 224(1)(d) of the Insurance Code provides that:

4

"[I]f it is found at any time before final settlement under the policy that the age of the insured (or the age of the beneficiary, if considered in determining the premium) has been misstated, the amount payable under the policy shall be such as the premium would have purchased at the correct age or ages, according to the company's published rate at the date of issue." 215 ILCS 5/224(1)(d) (West 2018).

¶ 15    On November 5, 2020, the circuit court entered a briefing order on Allstate's summary judgment motion. Although plaintiff was given a date to respond to the motion, no response was filed.

¶ 16    On December 2, 2020, plaintiff filed a *pro se* motion to compel discovery. In his motion to compel, plaintiff stated, *inter alia*, as follows:

"I am requesting this motion to compel because i think it will provide evidence that the practice I allege is present within the company. I feel this evidence may show itself better on a broader scale than by showing records on an individual basis. I believe the company knowingly or unknowingly supports the practice alleged by refusing to make data available that might support this conclusion. I think it is an assumption as well as gross negligence to presume my assumptions are false and yet show an unwillingness to provide adequate information that actually prove the falsehoods."

¶ 17    On January 4, 2021, Allstate responded in writing to plaintiff's motion to compel discovery. Allstate maintained that the requested information was irrelevant and was not probative of plaintiff's allegations or important in resolving the issues in the lawsuit.

¶ 18    On January 29, 2021, the circuit court granted summary judgment in favor of Allstate on plaintiff's *pro se* claim for breach of insurance contract. On February 25, 2021, plaintiff filed the

instant appeal of the circuit court's grant of summary judgment in favor of Allstate.

¶ 19    In his *pro se* appeal, plaintiff argues, *inter alia*, as follows:

"I am filing this appeal concerning the case of my mother's life insurance policy. Allstate denied my mother's full amount because the date she signed as her birthday that day did not match the date on her birth certificate. I believe the agent at the time new [*sic*] of my mother's age. The agent had dealt with my mother for many years. My mother has held many policies for many years with Allstate. Automobile, home, life for many decades. I believe records would show her age correctly on all but one. I don't think prior to entering that office to purchase that policy she had any intentions of defrauding Allstate. It would take actuarial tables. It's not guess work. I am sure my mother would not have been able to understand them. *** In the arbitration hearings I requested files or records of cases that were similar to my mother's and an official of the company indicated that they do not keep records of those cases. Not a year. Not a decade.

I am filing this appeal because the present situation allows for an agent or a company to continue to participate in something that fools the client, who may be desperate and in dire need, into thinking there is a chance of a payout of one amount when they know the balance and checks would not allow. Thereby continuing a revenue stream for both parties. It is hard to stop this behavior when one of the witnesses have passed and the other is not telling. I think a good measure would be to require the industry to ask for proof of age before a policy is signed. This would eliminate the area whereby someone could benefit from illicit profits. For this reason I ask you to overcome the decision."

¶ 20                                    II. ANALYSIS

¶ 21    On appeal, this court is asked to decide whether the circuit court erred in granting summary judgment in favor of Allstate on plaintiff's *pro se* claim for breach of insurance contract. We find no error.

¶ 22    The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a triable issue of fact exists. *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 280 (2007). Summary judgment is proper when the "pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016); *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). In ruling on a motion for summary judgment, we construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmoving party. *Seymour v. Collins*, 2015 IL 118432, ¶ 42. "Although summary judgment is a drastic measure, it is to be encouraged in the interest of prompt disposition of lawsuits where the movant's right to a judgment is clear." *Morales v. Herrera*, 2016 IL App (1st) 153540, ¶ 13. A circuit court's grant of summary judgment is reviewed *de novo*. *Gillespie v. Edmier*, 2020 IL 125262, ¶ 9.

¶ 23    Plaintiff's *pro se* claim for breach of insurance contract alleges willful misconduct and bad faith on the part of Allstate for reducing the death benefit amount. Plaintiff claims that agents from Allstate encourage elderly and African-American clients to misstate their ages on insurance applications in order to collect insurance premiums.

¶ 24    Plaintiff's claims are premised on allegations for which no evidence was presented. The evidence that plaintiff relies upon to demonstrate the existence of a genuine issue of material fact regarding his allegations of willful misconduct and bad faith are not in the record before this court.

It is well settled that appellate courts will not consider evidence or factual assertions outside of the record on appeal. *Coleman v. Windy City Balloon Port, Ltd.*, 160 Ill. App. 3d 408, 419 (1987). "Mere legal conclusions unsupported by facts do not create an issue of material fact sufficient to defeat a motion for summary judgment." *In re Marriage of Barnes*, 324 Ill. App. 3d 514, 519 (2001). In the instant case, plaintiff simply failed to present the trial court with any evidence to rebut Allstate's motion for summary judgment.

¶ 25                                A. Willful and Wanton Conduct

¶ 26    "No separate and distinct tort exists for willful and wanton conduct." *Doe v. Coe*, 2019 IL 123521, ¶ 78. "Rather, willful and wanton conduct is regarded as an aggravated form of negligence." *Id*. Thus, to recover for willful and wanton conduct, a plaintiff must plead and prove the elements of a negligence claim: (1) that defendant owed a duty to plaintiff; (2) the defendant breached that duty; and (3) that the breach was a proximate cause of plaintiff's injury. *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 19. "In addition, a plaintiff must allege either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Id.*

¶ 27    Willful and wanton is a tort concept that applies only to reckless or intentional tortious conduct that causes physical harm to a person or property, and it has no application to a nontort claim such as a routine breach of contract action. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 27. Willful and wanton conduct must involve some element of outrage similar to that usually found in a crime, either because the defendant's act was done with a deliberate intent to harm or because it was done with reckless indifference to the rights of others. *Shirk v. Kelsey*, 246 Ill. App. 3d 1054, 1066 (1993).

¶ 28    Here, plaintiff presents no evidence establishing that Allstate's decision to reduce the death

8

benefit rose to the level of willful and wanton conduct. In contrast, Allstate explained to the plaintiff, as well as to the Department, the arbitrator, and the circuit court, why it reduced the death benefit. Allstate explained that it adjusted and reduced the death benefit from $50,000 to $21,208, as the reduction was permitted under the express terms of the policy's "misstatement of age" provision and by section 224(1)(d) of the Insurance Code (215 ILCS 5/224(1)(d) (West 2018)).

¶ 29                          B. Covenant of Good Faith and Fair Dealing

¶ 30     All contracts include an implied duty of good faith and fair dealing, requiring the parties to act in a manner consistent with their reasonable expectations. *The Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 42. "Insurers have an implied duty to use good faith in representing their insureds." *Amerisure Mutual Insurance Co. v. Global Reinsurance Corporation of America*, 399 Ill. App. 3d 610, 619 (2010). "An insurer violates that duty when it acts in a vexatious, unreasonable, or outrageous manner." *Id.* Bad faith will not be found when an insurer complies with a misstatement of age provision contained in an issued life insurance policy. See, *e.g.*, *Antenor v. Fidelity & Guaranty Life Insurance Co.*, 2009 WL 323532 at *5 (awarding summary judgment in favor of insurer on plaintiff's bad faith claim where life insurance policy "provided that the death benefits would be adjusted if it were determined that the policyholder had misstated her day of birth"); *Wayside Farms, Inc. v. Hartford Life Insurance Co.*, 886 F.2d 139, 142 (6th Cir. 1989) (affirming district court's finding that insurer did not act in bad faith where "[the insured's] actions [in misstating her age], rather than any bad faith by [the insurer], caused the need for the benefits to be adjusted"). Plaintiff has failed to establish any bad faith on the part of Allstate for reducing the death benefit amount pursuant to the misstatement of age provision contained in the decedent's life insurance policy and section 224(1)(d) of the Insurance Code.

¶ 31                                 III. CONCLUSION

¶ 32     Having found no violation of the policy or bad faith on the part of Allstate, we find the

circuit court did not err in granting summary judgment in favor of Allstate.

¶ 33     For the foregoing reasons, we affirm the circuit court's order granting summary judgment

in favor of Allstate.

¶ 34     Affirmed.